APPEALS OF SIR WILLIAM PLENDER, PERCIVAL D. GRIFFITHS, LIONEL MALTBY, AND ARTHUR E. CUTFORTH.

APPEAL OF VIVIAN HARCOURT.

Docket Nos. 2885 and 2774. Submitted May 11, 1925. Decided October 20, 1925.

> An amount paid under the facts herein *held* to be a capital expenditure.

*Edward H. Green, Esq.*, and *H. B. Atkins, C. P. A.*, for the tax-payers.
*Blount Ralls, Esq.*, for the Commissioner.

Before IVINS,[1] MARQUETTE, and MORRIS.

| | |
|---|---|
| Sir William Plender | $119. 68 |
| Percival D. Griffiths | 52. 92 |
| Lionel Maltby | 32. 97 |
| Arthur E. Cutforth | 12. 68 |
| Vivian Harcourt | 293. 66 |

The deficiencies arose from the disallowance by the Commissioner of a deduction of $9,332.80, made in computing the net income of the

---

[1] This decision was prepared during Mr. Ivins's term of office.

copartnership, of which all the appellants are members, for the purpose of determining the respective distributive shares of the several appellants. A hearing was held and the cases submitted on the pleadings and oral and documentary evidence, from which the Board makes the following

### FINDINGS OF FACT.

Sir William Plender, Percival D. Griffiths, Lionel Maltby, and Arthur E. Cutforth are subjects of Great Britain and residents of London, England. Vivian Harcourt is a citizen and resident of the State of New York. All of the appellants are members of the firm of Deloitte, Plender, Griffiths & Co., a copartnership engaged in the practice of public accounting and auditing, with offices at 49 Wall Street, New York, N. Y.

The business of the firm of Deloitte, Plender, Griffiths & Co. was originally established in England about 1830, and has been carried on ever since by the successors of the original founder. In or about the year 1906 a separate and subsidiary partnership was founded, under the same firm name, for the purpose of conducting the practice of public accounting and auditing in the United States. Said partnership, in accordance with the provisions of the articles of copartnership, expired by the effluxion of time on October 1, 1911.

On July 9, 1912, a new partnership was formed to succeed to the business of that which had expired. The preamble of the articles of copartnership of the new firm, and such of the articles as are material in the consideration of the issue on appeal, are quoted below:

This indenture made on the ninth day of July One Thousand nine hundred and twelve Between Sir William Plender and Percival Davis Griffiths of 5 London Wall Buildings in the City of London Chartered Accountants of the first part Francis Frederick White of 49 Wall Street New York in the United States of America Certified Public Accountant of the second part Frederick Palmer Page of 49 Wall Street aforesaid Chartered and Certified Public Accountant of the third part and Thomas Robert Clark of 49 Wall Street aforesaid Chartered and Certified Public Accountant of the fourth part.

Whereas the said Sir William Plender and Percival Davis Griffiths have for some years past carried on business at 5 London Wall Buildings aforesaid as "Deloitte Plender Griffiths & Company" and they have also carried on business with the said Francis Frederick White, Frederick Palmer Page, Robert Launcelot Cuthbert and Thomas Robert Clark under the same style at 49 Wall Street and at Edificio La Mutua Mexico City under certain Partnership Articles dated the second day of February One Thousand nine hundred and six and made between the said Sir William Plender and Percival Davis Griffiths of the first part the said Francis Frederick White of the second part the said Frederick Palmer Page of the third part the said Robert Launcelot Cuthbert of the fourth part and the said Thomas Robert Clark of the fifth part which expire on the first day of October One thousand nine hundred and eleven but such business has been kept entirely distinct and separate from the business carried on in London.

And whereas the said Robert Launcelot Cuthbert retires by effluxion of time from the said business and the parties hereto have agreed to take over and discharge the liabilities to the said Robert Launcelot Cuthbert under the said Partnership Articles as hereinafter appearing.

And whereas the said Sir William Plender and Percival Davis Griffiths in regard to the business carried on in London (hereinafter called "the London Firm") are the members of the firm of Deloitte Plender Griffiths & Company at the present time and they in conjunction with the said Francis Frederick White, Frederick Palmer Page and Thomas Robert Clark (Hereinafter called "the New York Firm") have agreed to carry on business in future in co-partnership at New York and elsewhere in the United States of America Canada Mexico Cuba and the other West Indian Islands and in any place subject to the jurisdiction of the United States of America upon the terms and subject to the covenants and conditions contained in the following articles

Now this indenture witness as follows:—

1. That the London Firm and the New York Firm mutually covenant and agree to become and be Partners in the profession or business of accountants and auditors in the United States of America Canada Mexico Cuba and other West Indian Islands and in any other place or places subject to the jurisdiction of the United States of America.   *   *   *.

4. The partnership shall commence as from the first day of October One thousand nine hundred and eleven and continue until the first day of October One thousand nine hundred and eighteen and shall not be dissolved in the meantime by the death lunacy bankruptcy or misconduct of any of the members of either the London or the New York Firms but the provisions hereinafter contained shall as to the said Francis Frederick White, Frederick Palmer Page and Thomas Robert Clark take effect.

5. The partnership shall be carried on under the style or firm name of "Deloitte Plender Griffiths & Company."

6. The partnership business shall include the ordinary business of accountants and auditors and also of receivers liquidators and the holding of other offices and appointments of profit usually held by accountants but in carrying on the said business the parties hereto shall not promote or engage in anything in the nature of promotion of companies or other business likely to involve risk or damage to the credit of the firm.   *   *   *.

26. In the event of the said Francis Frederick White, Frederick Palmer Page and Thomas Robert Clark acting in contravention of any of the terms of these presents which on their parts are to be observed and performed or in case of their or any of them doing or suffering any act matter or thing which may injure or prejudice the business of the partnership the members for the time being of the London Firm with the consent of any two of the New York Partners shall be at liberty immediately to determine this Agreement and the party or parties hereto who shall have so acted shall thereupon cease to have any interest in the partnership and he or they shall not be entitled to any compensation or payment on account thereof beyond his or their share of the assets *exclusive of goodwill* and the profits to the date of his or their ceasing to be a Partner or Partners as aforesaid.   *   *   *.

33. Nothing herein contained shall be deemed to give to the said Francis Frederick White, Frederick Palmer Page and Thomas Robert Clark any right or title to use and they shall not use after the termination of the partnership by any means whatever or in any form either separately or in combination the name of "Deloitte" "Plender" or "Griffiths" or any other member for the time being of the London Firm.   *   *   *.

35. If any of the parties hereto shall die or become insane or permanently incapacitated through ill health injury or sickness during the partnership the surviving Partners or Partner or the continuing Partners or Partner as the case may be and the executors or administrators of the deceased Partner or the representatives of such insane or incapacitated Partner shall as soon as conveniently may be prepare a statement of the accounts and transactions of the partnership *including therein the value of the goodwill of the partnership* calculated on the basis hereinafter mentioned up to the date of such decease or in case of insanity or incapacity up to the time of giving or leaving notice as provided in Article 31 hereof and the surviving Partners or Partner or the continuing Partners or Partner shall proceed with all convenient speed to collect and get in the credits of the partnership and after payment thereout of all and every sum or sums of money owing by the partnership shall from time to time as often as the moneys in their or his hands shall amount to Five Thousand Dollars ($5,000.00) pay over to or account with the executors or administrators of the deceased Partner or the representative of such insane or incapacitated Partner for their share or proportion thereof and the expenses attending the winding up and adjustment of the said accounts and the collection and receipts of the said credits shall be paid out of the partnership funds.

36. For the purposes of valuation the goodwill of the partnership shall for the purposes of the last preceding article be deemed to be equal to one half year's purchase of the average net yearly profits of the partnership for the period which shall have elapsed from the commencement of this partnership. * * *.

38. In case of the dissolution of the partnership by effluxion of time the parties hereto as soon as conveniently may be after such dissolution shall prepare a general statement of the partnership affairs and transactions and pecuniary accounts but in such statement *the goodwill of the business of the partnership shall not be taken into account* and after making an effectual provision for the liquidation of the debts owing from the partnership shall make a distribution division and allotment of the partnership credits property and effects between them according to their said several proportions and interests therein or in case it shall be deemed more expedient so to do the same credits property and effects shall be collected got in and converted into money on the joint account of the Partners. And the deeds documents drafts of documents and other documents and papers in the custody of the said parties respectively as such Partners as aforesaid shall subject as hereinafter mentioned be divided between them in manner following (that is to say) :—That papers relating to the business of persons who were clients of any of the Partners before the formation of the partnership under the Articles of February second One thousand nine hundred and six shall (unless the contrary be directed as hereinafter mentioned by such clients) be committed to the custody of the Partner whose clients such persons formerly were and with respect to the papers relating to the business of clients not included in this class the same shall subject as hereinafter mentioned be as far as practicable divided between the Partners in accordance with their respective interests and in case any dispute shall arise as to the custody of the papers in any particular business it shall be referred to the client to whose business they relate to determine to which of the Partners the said papers should be delivered provided nevertheless that nothing herein contained shall prejudice or affect any lien which the parties hereto may have on the partnership account or otherwise on any deeds documents or writings in their respective hands or custody. * * *.

42. The London Firm agrees that if after the dissolution of the partnership by effluxion of time any or all of the other parties shall retire and no longer

engage or carry on the business of public accountant or accountants or any other business described in Article 6 hereof the London Firm will pay to such party a sum equal to one year's profit based upon his average annual share of the profits during the term of this partnership provided always that should such retiring Partner or Partners have purchased the goodwill of any other Partner or Partners as provided by Clauses 34 and 35 the share of the profits of such purchased interests for the whole term of the partnership shall be added and taken into account in arriving at the value of the interest of any Partner or Partners retiring under this clause.

In accordance with the provisions of Article 4, quoted above, this partnership expired by the effluxion of time on October 1, 1918, and upon the dissolution thereof Robert Thomas Clark retired from the business and thereafter no longer engaged in any of the businesses described in Article 6 of the partnership agreement.

On August 5, 1919, a new partnership was formed to succeed to the business of that which expired on October 1, 1918. The new firm had as its members Sir William Plender, Percival Davis Griffiths, Edward Davis, Lionel Maltby, Arthur Edwin Cutforth, Francis Frederick White, Frederick Palmer Page, and Vivian Harcourt. The articles of copartnership provided that " The parties hereto have agreed to take over and discharge the liabilities to the said Thomas Robert Clark under the said partnership articles (dated July 9, 1912) as hereinafter appearing." Accordingly, the new partnership assumed the liability of the " London firm " to said Clark under the provisions of Article 42 of the articles of copartnership dated July 9, 1912, and during the partnership fiscal year ended September 30, 1919, there was paid to said Clark out of the partnership earnings the sum of $9,332.80.

In computing the net income of the partnership for the fiscal year ended September 30, 1919, said sum of $9,332.80 paid to said Clark was deducted as an ordinary and necessary expense of the business. The distributive shares of the partners in the partnership net income, as returned by them for the purposes of the income tax, represented their respective distributive shares in the partnership net income after the deduction of the amount paid to Clark.

### DECISION.

The determinations of the Commissioner are approved.

### OPINION.

MARQUETTE: The Commissioner has held that the amounts returned by the partners in their respective returns as their distributive shares in the partnership earnings are in error, since those earnings were improperly reduced by the deduction of the payment made to Clark, said payment constituting a capital expenditure in the nature

of a purchase of Clark's interest in the good will of the predecessor partnership. On the other hand, appellants contend that the good will of the business was expressly retained, under the provisions of the partnership agreement of July 9, 1912, for the principal firm of Deloitte, Plender, Griffiths & Co., in England, and the "New York firm," as such; that the "American" members of said firm were prevented from obtaining any interest or share in the name or good will of the "New York firm" or the "London firm"; that since Clark, upon his retirement, had no interest or share in such good will, he had none such which he could sell to the "London firm" or to the new partnership; and that said payment to Clark was in reality in the nature of a pension or similar compensatory payment that the partnership had obligated itself to make to one who was terminating his connection with the partnership after many years of service, and, as such, constitutes an ordinary and necessary expense of doing business which may properly be deducted in computing the partnership net income for the purpose of determining the distributive shares of the respective partners.

The appeal raises but one issue, and that pertains to the nature of the payment made by the partnership, of which appellants are members, to Robert Thomas Clark. Did it represent a payment in the nature of a pension or similar compensatory payment to one who was terminating his connection with the partnership after many years of service, as contended by the appellants, or a payment to Clark for the purchase of his interest in the good will of the predecessor partnership, as contended by the Commissioner? We believe that it was neither, and that the contentions of both parties on this proposition are in error.

Clark rendered no service whatever to the new partnership; he was not even a member of the firm. How, then, could we regard this payment to him as a pension or similar compensatory payment after many years of service? Clark, upon his retirement from the predecessor business, had no interest whatever in the good will of the business which could be made the subject of barter and sale. How, then, could there have been a purchase from him by the partnership of such an interest?

The liability for the payment to Clark was, under the provisions of article 42 of the articles of copartnership of the predecessor firm, primarily that of its English members. This liability was assumed by the present partnership; and, while not expressly stated in the partnership agreement, we may well imply that it represents a consideration on the part of the partnership for the capital contribution made thereto by its English members.

The same ends would have been served had the members of the "London firm" liquidated this liability themselves and contributed

a proportionately less capital, without disturbing their distributive interests, to the new partnership. Surely, under such circumstances, no one would have maintained that the partnership had incurred a deductible expense.